**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| STEVENS TRUCKING CO., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>C.H. ROBINSON COMPANY, INC., d/b/a C.H. ROBINSON WORLDWIDE, ET AL.,<br><br>Defendants. | Case No. 2:26-cv-869-JRG<br><br>Oral Argument Requested |

**DEFENDANTS C.H. ROBINSON WORLDWIDE, INC., C.H. ROBINSON COMPANY, INC., C.H. ROBINSON COMPANY, LLC, AND C.H. ROBINSON INTERNATIONAL, INC.'S MOTION TO SEVER AND TRANSFER VENUE UNDER RULE 21 AND 28 U.S.C. §1404**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 3

I. Severance Is Warranted .......... 4

A. There Is No Common Transaction Or Occurrence .......... 4

B. There Are Few, If Any, Common Questions Of Law Or Fact .......... 6

C. Maintaining A Single Action Would Not Promote Judicial Economy .......... 7

D. Prejudice Considerations Weigh In Favor Of Severance .......... 7

E. Different Witnesses And Documentary Evidence Are Required .......... 8

II. Transfer To The District of Minnesota Is Justified .......... 10

A. The Threshold Inquiry For Transfer Is Met .......... 11

B. The Private And Public Factors Weigh In Favor Of Transfer .......... 11

1. The private interest factors favor transfer. .......... 11

2. The public interest factors favor transfer. .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Americans for Fair Pat. Use, LLC v. Sprint Nextel Corp.*, 2011 WL 98279 (E.D. Tex. Jan. 12, 2011) ....5

*Amide Beverage Co. v. Amazon.com, Inc.*, 2026 WL 1146895 (E.D. Tex. Apr. 28, 2026) ....4

*Arnold v. Remington Arms Co.*, 2017 WL 9285419 (E.D. Tex. Feb. 17, 2017) ....12

*Buc-ee's, Ltd. v. Bucks, Inc.*, 262 F. Supp. 3d 453 (S.D. Tex. 2017) ....4

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ....11

*Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) ....4, 6, 10, 14

*Delce v. Amtrak & Resco Holdings, Inc.*, 180 F.R.D. 316 (E.D. Tex. 1998) ....7

*Garrett v. Hanson*, 429 F. Supp. 3d 311 (E.D. Tex. 2019) ....12, 14, 15

*Horne v. Tex. Dep't of Transp.*, 2019 WL 5550626 (E.D. Tex. Oct. 28, 2019) ....6

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ....13

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014) ....3

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ....10, 14

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ....3, 10, 13

*Jones v. Dematic Corp.*, 2013 WL 12129709 (N.D. Tex. Nov. 8, 2013) ....9

*Lodsys, LLC v. Brother Int'l Corp.*, 2012 WL 760729 (E.D. Tex. Mar. 8, 2012), *on reconsideration*, 2013 WL 1338767 (E.D. Tex. Jan. 14, 2013) ....4, 6

*Maxell, Ltd. v. Coretronic Corp.*, 2025 WL 1674398 (E.D. Tex. Mar. 26, 2025) ....11

*Newman v. Smith Cnty.*, 2025 WL 901258 (E.D. Tex. Mar. 25, 2025) ....8

*Norwood v. Kirkpatrick*, 349 U.S. 29 (1955) ....3

*Parmer v. Entrust Corp.*, 2024 WL 1889241 (E.D. Tex. Apr. 29, 2024) ....10

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000) ....6

*SQIP, LLC v. Cambria Co.*, 728 F. Supp. 3d 447 (E.D. Tex. 2024) .... *passim*

*Tex. Farmers Ins. Co. v. La.-Pac. Corp.*, 321 F.R.D. 561 (E.D. Tex. 2017)..........................7, 8, 9

*Varela v. Gonzales*, 773 F.3d 704 (5th Cir. 2014)..............................................................6

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C. §1331..........................................................................................................11

28 U.S.C. §1391..........................................................................................................3, 11

28 U.S.C. §1404(a) ......................................................................................................1, 3

Fed. R. Civ. P. 21 ........................................................................................................1, 3

Defendants C.H. Robinson Worldwide, Inc. and its subsidiaries, C.H. Robinson Company, Inc., C.H. Robinson Company, LLC, and C.H. Robinson International, Inc. (collectively, "C.H. Robinson") respectfully submit this motion to sever the claims against them under Federal Rule of Civil Procedure 21 and to transfer venue under 28 U.S.C. §1404(a) to the District of Minnesota.

**INTRODUCTION**

Plaintiffs are six foreign trucking companies that compete with C.H. Robinson, a federally licensed freight broker based in Minnesota, for access to customers' freight jobs. This lawsuit, however, has no meaningful connection to the Eastern District of Texas. Neither C.H. Robinson nor any of the Plaintiffs are incorporated or have their principal place of business in Texas. The only connection between Plaintiffs' claims and this District is cursory allegations that two out of the dozens of customer freight jobs Plaintiffs claim to have lost to C.H. Robinson happened to come from or pass through here.

Plaintiffs have also sued TQL, an Ohio-based freight broker that competes with Plaintiffs (and C.H. Robinson) for freight jobs. Although Plaintiffs vaguely refer to both C.H. Robinson and TQL as "Defendants" in the Complaint, there is no allegation that C.H. Robinson and TQL were either formally affiliated or otherwise conspired with each other to harm Plaintiffs. Instead, Plaintiffs allege that C.H. Robinson and TQL each engaged in their own allegedly criminal conduct, through their respective "brokerage enterprises," at Plaintiffs' expense.

Given that the allegations against C.H. Robinson and TQL do not arise out of the same transaction or occurrence, the dispute lacks connection to the Eastern District of Texas, and convenience favors the District of Minnesota as C.H. Robinson's home state, the Court should sever Plaintiffs' claims against C.H. Robinson and transfer them to the District of Minnesota.

## STATEMENT OF FACTS

Plaintiffs are six trucking companies, none of which is from Texas. Three of the Plaintiffs (Stevens Trucking Company, Western Flyer Express, and D&M Carriers) are Oklahoma companies with their principal place of business in Oklahoma. Compl. ¶¶39-41. Christenson Transportation, Inc. is a Missouri company, *id.* ¶42, and IWX Motor Freight LLC is an Oklahoma company, *id.* ¶43—both have their principal place of business in Missouri, *id.* ¶¶42-43. E.O.S. Inc. is an Arkansas company with its principal place of business in Arkansas. *Id.* ¶44.

C.H. Robinson, a Delaware company with its principal place of business in Minnesota, Compl. ¶¶45-48, is not itself a trucking company but still competes with Plaintiffs for business in the long-haul freight market, *id.* ¶¶4, 11, 66. C.H. Robinson contracts with third-party motor carriers to deliver customers' freight. *Id.* ¶¶62, 66.

Plaintiffs allege that C.H. Robinson committed wire fraud, benefited from forced labor, and engaged in false advertising in order to outcompete Plaintiffs. *See* Compl. ¶¶2-4, 14, 242, 307-25. Specifically, Plaintiffs claim that C.H. Robinson has been able to underbid Plaintiffs by relying on third-party motor carriers who engage in a variety of regulatory and labor law violations, providing C.H. Robinson with access to low-cost labor. *See, e.g.*, *id.* ¶¶1-3, 179, 184. Plaintiffs also allege that C.H. Robinson deceives its customers by saying that it can provide cheaper, quicker services while concealing its reliance on these so-called "illegal carriers." *See id.* ¶¶191-96, 208-09, 212. Plaintiffs claim that in doing so, C.H. Robinson violated the RICO statute and the Lanham Act, and that each violation caused Plaintiffs to lose business and market share. *See id.* ¶¶287, 294, 302, 306, 325.

In addition to suing C.H. Robinson, Plaintiffs allege that TQL—a separate Ohio company with its principal place of business in Ohio, Compl. ¶49—also violated the RICO statute and the Lanham Act based on TQL's own separate enterprise and misrepresentations to TQL's customers.

*See, e.g.*, *id.* ¶¶ 148, 167-78, 185-89, 197-205, 220-29. TQL has separately moved to sever the claims against it and dismiss them for *forum non conveniens*. *See* Dkt. 22. If the Court grants TQL's motion and/or C.H. Robinson's instant motion, Plaintiffs' claims against C.H. Robinson and TQL would proceed in different venues.

**LEGAL STANDARD**

A district court has "wide discretion to sever a claim against a party into separate cases." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) (discussing Fed. R. Civ. P. 21). A district court also has discretion to transfer a civil case "[f]or the convenience of parties and witnesses … to any other district or division where it might have been brought." 28 U.S.C. §1404(a). "The underlying premise of §1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955)).

In a combined severance-and-transfer motion, "where a court could transfer some but not all parties, … the inquiry collapse[s] into an inquiry into the relative merits of convenience versus judicial economy." *Rolls Royce*, 775 F.3d at 680. Where, as with TQL here, "some but not all parties have entered into a forum selection clause," this may well result "in the direction of one judicial district for the forum-selection clause parties, and in another direction for the parties without a preexisting agreement." *Id.* at 679, 681 (instructing district court to sever and transfer claims against one defendant over plaintiff's and other defendants' objections).

**ARGUMENT**

The Court should sever and transfer Plaintiffs' claims against C.H. Robinson because litigating in the District of Minnesota is more convenient, severance poses no threat to judicial economy, and a single action risks prejudice to both C.H. Robinson and TQL.

## I. Severance Is Warranted

"Because [a] claim cannot be transferred unless it is severed," the Court should first address C.H. Robinson's "request for severance before addressing the request for transfer." *Amide Beverage Co. v. Amazon.com, Inc.*, 2026 WL 1146895, at *5 (E.D. Tex. Apr. 28, 2026). Courts in the Fifth Circuit consider five factors when evaluating a severance motion: (1) "whether claims arise out of the same transaction, occurrence, or series of transactions or occurrence"; (2) "whether the claims present common questions of law or fact"; (3) "whether settlement of the claims or judicial economy would be facilitated"; (4) "whether prejudice would be avoided if severance were granted"; and (5) "whether different witnesses and documentary proof are required for the separate claims." *Def. Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022) (collecting cases). Here, each factor weighs in favor of severance.

### A. There Is No Common Transaction Or Occurrence

No common transaction or occurrence gives rise to Plaintiffs' claims against C.H. Robinson and TQL. "Transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) [permitting joinder] if there is some connection or logical relationship between the various transactions or occurrences." *Lodsys, LLC v. Brother Int'l Corp.*, 2012 WL 760729, at *5 (E.D. Tex. Mar. 8, 2012) (Gilstrap, J.), *on reconsideration*, 2013 WL 1338767 (E.D. Tex. Jan. 14, 2013). This requirement is not met here, as the Complaint does not allege that C.H. Robinson and TQL—two competing freight brokers—shared any common transaction or occurrence.

Plaintiffs' undifferentiated references in their Complaint to "Defendants" do "not render the claims against each defendant so inextricably intertwined as to make it unusually difficult for a court to evaluate the merits of the allegations against any single defendant." *Buc-ee's, Ltd. v. Bucks, Inc.*, 262 F. Supp. 3d 453, 466 (S.D. Tex. 2017) (granting severance and transfer). More

importantly, this is not a case where C.H. Robinson and TQL engaged in transactions with or even involving each other that in turn caused Plaintiffs' claimed injuries. *See, e.g.*, *Americans for Fair Pat. Use, LLC v. Sprint Nextel Corp.*, 2011 WL 98279, at *3 (E.D. Tex. Jan. 12, 2011) (finding "many series of transactions or occurrences that connect [three] defendants in relevant and material ways," based on defendants selling the same products made by the same vendor to each other). Instead, Plaintiffs' RICO claims are premised on predicate acts carried out separately by each Defendant as part of distinct alleged enterprises between each Defendant broker and motor carriers in that broker's network. *See, e.g.*, Compl. ¶146 (alleging that C.H. Robinson's Navisphere Carrier platform "is where *CH Robinson's* … enterprise lives" and identifying the "Illegal Carriers" with whom C.H. Robinson contracts—not TQL—as the "other members in the enterprise" with C.H. Robinson (emphasis added)); *id.* ¶235 ("Defendants each operate and control *their respective* brokerage enterprises" (emphasis added)); *id.* ¶236 (alleging that C.H. Robinson and TQL each operate their own association-in-fact enterprise "in conjunction with the Illegal Carriers," not with the other defendant).

There also is no allegation that C.H. Robinson and TQL coordinated and engaged in the same acts of wire fraud as part of any single occurrence. Instead, Plaintiffs allege that each Defendant engaged in distinct acts that constituted wire fraud. *Compare, e.g.*, Compl. ¶¶191-96 (describing C.H. Robinson's alleged misrepresentations to its customers in "CH Robinson's customer agreements") *with id.* ¶¶197-205 (separately describing TQL's alleged misrepresentations to its own customers in "TQL's customer agreements").

Similarly, Plaintiffs' Lanham Act claims arise from separate representations that each Defendant allegedly made to distinct customers. Plaintiffs impermissibly group-plead that "Defendants widely disseminated numerous oral, written, and online statements" that Plaintiffs

claim constitute false advertising, Compl. ¶308, but there is no allegation that C.H. Robinson and TQL jointly made any of these statements or that each Defendant's statements were made to the same customers or as part of the same transaction or occurrence.

In short, there is no "connection or logical relationship between the various transactions or occurrences" giving rise to Plaintiffs' claims, so this factor supports severance. *Lodsys*, 2012 WL 760729, at *5.

**B. There Are Few, If Any, Common Questions Of Law Or Fact**

The claims do not present common questions of law or fact. "A common question of law and fact exists when each of [Plaintiffs'] claims are based on violation of the same law and share a common nucleus of underlying facts," while a "common question of fact exists when the facts concerning each of [Plaintiffs'] claims are inextricably woven together." *Horne v. Tex. Dep't of Transp.*, 2019 WL 5550626, at *3 (E.D. Tex. Oct. 28, 2019) (cleaned up).

To prove their RICO claims as to each Defendant, Plaintiffs must establish, among other things, that each Defendant committed predicate acts that directly caused Plaintiffs' alleged injuries. *See, e.g.*, *Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014). The alleged predicate acts here are unique to each Defendant—whether C.H. Robinson's bids and contracts constituted wire fraud has no bearing on whether TQL's did. Likewise, to prove their Lanham Act claims, Plaintiffs must show that a particular false or misleading statement of fact by each Defendant was materially deceptive and injured Plaintiffs. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). Because C.H. Robinson's statements about the motor carriers in its network (including their drivers, safety, and performance) say nothing about TQL, their truth or falsity has no bearing on TQL's alleged violations. This is therefore not a case where "the principal claims against both defendants are temporally and factually intertwined to the extent that litigation in separate courts would largely overlap." *Def. Distributed*, 30 F.4th at 430, 432 (rejecting

severance and transfer where claims against one defendant "cannot be proven without initial proof" of another defendant's conduct).

### C. Maintaining A Single Action Would Not Promote Judicial Economy

Because assessing each Defendant's liability will require facts and arguments specific to that Defendant's own predicate acts and representations, a single action will not promote judicial economy. *See Tex. Farmers Ins. Co. v. La.-Pac. Corp.*, 321 F.R.D. 561, 565 (E.D. Tex. 2017) ("Presenting varied facts for each claim will cause confusion and outweigh any benefit received from the judicial economy of solving a few common questions." (cleaned up)). Combining the claims against both Defendants—two independent freight brokers with their own separate business relationships with customers and carriers—will instead cause confusion over causation and damages. *See infra* Section I.D.

### D. Prejudice Considerations Weigh In Favor Of Severance

Severance would cause no prejudice, whereas trying the claims against C.H. Robinson and TQL together would prejudice C.H. Robinson. Where "there are multiple issues that are unique to each claim [Plaintiffs] bring[], especially as it pertains to causation, damages, and whether [a Defendant] 'knew or should have known' of" a key issue underpinning Plaintiffs' claims, it would be prejudicial and confusing to a jury to adjudicate the claims "in a single trial setting." *Tex. Farmers Ins. Co.*, 321 F.R.D. at 565. Plaintiffs must prove, among other things, (a) that C.H. Robinson's conduct (as opposed to TQL's) caused their injuries; (b) which bids, loads, and revenue they lost to C.H. Robinson specifically, *see* Compl. ¶¶331-45; and (c) what C.H. Robinson, separate from TQL, knew about the alleged misconduct of the third-party "Illegal Carriers" (on which all of Plaintiffs' claims are predicated), *see id.* ¶¶6, 14, 66, 163, 193, 275, 283-84, 298-99, 304, 315, 317, 323.

Presenting these issues for separate Defendants facing factually distinct claims to a single jury is precisely the scenario that risks prejudice. *See Delce v. Amtrak & Resco Holdings, Inc.*, 180 F.R.D. 316, 320-21 (E.D. Tex. 1998) (concluding that because "Plaintiffs allege different injuries involving different parties, witnesses and facts," "any gain in judicial economy" was lost and a single trial "will now likely result only in confusing a jury or other fact finder"). The risk is heightened by Plaintiffs lumping C.H. Robinson and TQL together in their Complaint without alleging joint and several liability (for which there is no basis), leaving the parties to parse this out before the jury. *Cf. Newman v. Smith Cnty.*, 2025 WL 901258, at *1 (E.D. Tex. Mar. 25, 2025) ("The Fifth Circuit has … spoken out against group pleading and lumping defendants together when applying other legal frameworks, some with heightened pleading requirements," including "in the RICO context"). "Therefore, principles of fairness and equity weigh in favor of severance." *Tex. Farmers Ins. Co.*, 321 F.R.D. at 565.

**E. Different Witnesses And Documentary Evidence Are Required**

Because of the distinct questions of law and fact, "vastly different witnesses and documentary proof will be necessary to adjudicate each claim" Plaintiffs raise against each Defendant. *Tex. Farmers Ins. Co.*, 321 F.R.D. at 563. For example, to prove C.H. Robinson's purported RICO violations, Plaintiffs will need witnesses who can testify to, among other things, the extent to which C.H. Robinson used the so-called "Illegal Carriers"; which jobs C.H. Robinson used those carriers for; whether C.H. Robinson's bids were only possible because of its reliance on these "Illegal Carriers"; and whether C.H. Robinson knew about the "Illegal Carriers'" alleged safety and compliance violations. That testimony concerns C.H. Robinson's business practices and has no bearing on TQL's liability.

Additionally, to the extent Plaintiffs or TQL call witnesses to testify about TQL's alleged misconduct, that could confuse a jury into thinking that testimony specific to TQL also establishes

C.H. Robinson's liability, particularly where (a) a third-party carrier may have transported loads for both C.H. Robinson and TQL, or (b) a customer may have received brokerage services from both C.H. Robinson and TQL. *See Tex. Farmers Ins. Co.*, 321 F.R.D. at 564 (explaining that "severance is appropriate if trying the claims together would 'confuse the jury due to legal and factual differences'" (quoting *Delce*, 180 F.R.D. at 319)). And even if some witnesses would be common to claims against both C.H. Robinson and TQL, "courts routinely sever claims when 'their testimony will differ between the claims.'" *Id.* (quoting *Jones v. Dematic Corp.*, 2013 WL 12129709, at *2 (N.D. Tex. Nov. 8, 2013)). Here, "each claim requires a fact-intensive analysis, especially regarding the cause [of Plaintiffs' alleged lost business] and the resulting damages," so "each witness will have to testify about causation and damages as they relate to the specific [Defendant, bid, customer, or carrier] of which they have knowledge." *Id.*

"In addition to the varying witnesses that will necessarily have to testify regarding each claim, a large amount of documentary evidence will be unique to each claim." *Tex. Farmers Ins. Co.*, 321 F.R.D. at 564. For example, to support their RICO allegations, Plaintiffs allege that C.H. Robinson made fraudulent representations in its customer agreements, Compl. ¶¶191-95; targeted certain customers with allegedly inaccurate representations about C.H. Robinson's own freight capacity, speed, safety, and compliance record, *id.* ¶208; knew about third-party "Illegal Carriers'" purportedly falsified logbooks, underinsurance, and safety violations, *id.* ¶¶1, 137-45, 163; and knew about these carriers' exploitation of drivers, *id.* ¶¶179-84. The "only source" of much of "that evidence," or lack thereof, "is [C.H. Robinson] itself." *Tex. Farmers Ins. Co.*, 321 F.R.D. at 564. The same is true of the documentary evidence related to Plaintiffs' allegations specifically about TQL, *see, e.g.*, Compl. ¶¶167-78, 185-89, 197-205, which will have no relevance to C.H. Robinson.

Similarly, Plaintiffs' damages theory will require data on the specific bids, loads, and revenue Plaintiffs claim to have lost that is directly attributable to C.H. Robinson, including the "benchmarks" and "targets" on which Plaintiffs base their suspicion that C.H. Robinson outbid them on freight jobs. *See* Compl. ¶¶331-45. That evidence will necessarily be specific to C.H. Robinson.

* * *

This is not a case where severance will lead to the same issues being litigated in two places, risking conflicting rulings. *Cf. Def. Distributed*, 30 F.4th at 431 (rejecting severance and transfer where it "enhance[d] the risk of conflicting rulings"). Plaintiffs allege different facts underpinning each Defendant's alleged misconduct, and whether C.H. Robinson is liable has no bearing on whether TQL is liable, and vice versa. Maintaining a single action, by contrast, risks prejudice to both Defendants. The Court should sever Plaintiffs' claims against C.H. Robinson and, as discussed below, transfer them to the District of Minnesota.

## II. Transfer To The District of Minnesota Is Justified

Having established that severance is appropriate, and regardless of how the Court resolves TQL's separate motion to sever, transfer of Plaintiffs' claims against C.H. Robinson is warranted because the District of Minnesota is clearly more convenient for those claims.

The "threshold inquiry" on a motion to transfer is "'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.'" *Parmer v. Entrust Corp.*, 2024 WL 1889241, at *2 (E.D. Tex. Apr. 29, 2024) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). Assuming that threshold is met, courts in the Fifth Circuit analyze a set of "four private-interest and four public-interest factors" to determine whether the movant has demonstrated "that the proposed transferee venue is 'clearly more convenient.'" *SQIP, LLC v. Cambria Co.*, 728 F. Supp. 3d 447, 453 (E.D. Tex. 2024) (quoting *Volkswagen of Am.*, 545

F.3d at 315). Here, Plaintiffs could have filed their claims against C.H. Robinson in the District of Minnesota, and the private- and public-interest factors weigh heavily in favor of transfer.

### A. The Threshold Inquiry For Transfer Is Met

A case "could have been filed" in a proposed transferee district if the court there has subject-matter jurisdiction and personal jurisdiction over the defendant and is a proper venue. *Maxell, Ltd. v. Coretronic Corp.*, 2025 WL 1674398, at *1 (E.D. Tex. Mar. 26, 2025). The District of Minnesota satisfies this test.

C.H. Robinson is subject to personal jurisdiction in Minnesota because it has its principal place of business there. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see also* Compl. ¶¶45-48 (pleading that all C.H. Robinson entities have their principal place of business in Minnesota); Minton Decl. ¶14. The District of Minnesota would have subject-matter jurisdiction because "[t]his action arises under federal laws, including 18 U.S.C. §§1961-68 and 15 U.S.C. §1125." Compl. ¶16; *see also* 28 U.S.C. §1331. Venue is also proper because all C.H. Robinson Defendants are subject to personal jurisdiction in Minnesota, Compl. ¶¶45-48, and are residents in the District of Minnesota, *see* 28 U.S.C. §1391(c)(2). *See id.* §1391(b)(1).

### B. The Private And Public Factors Weigh In Favor Of Transfer

If "this threshold requirement is met, the Court [next] analyze[s]" a set of eight "private- and public-interest factors to determine whether [C.H. Robinson] has demonstrated that the District of Minnesota is a 'clearly more convenient' forum for the instant action than the Eastern District of Texas." *SQIP*, 728 F. Supp. 3d at 453.

#### 1. The private interest factors favor transfer.

The private interest factors are "(1) the relative ease of access to sources of proof"; "(2) the availability of compulsory process to secure the attendance of witnesses"; "(3) the cost of attendance for willing witnesses"; and "(4) all other practical problems that make trial of a case

easy, expeditious and inexpensive." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 317 (E.D. Tex. 2019) (Gilstrap, J.) (cleaned up). In the District of Minnesota, there is easy access to sources of proof because the documents relevant to this action are maintained by C.H. Robinson employees in Minnesota and Illinois; the cost of attendance for witnesses is low because the large majority of relevant C.H. Robinson employees are located either in Minnesota or nearby in Chicago; and the practical problems posed by a single action in this District are absent. The availability of compulsory process factor is neutral. Overall, the private interest factors strongly favor transfer.

***Ease of Access to Sources of Proof.*** "Courts in this District have held that this factor weighs in favor of transfer 'when a majority of the tangible and documentary evidence is located in the transferee court's district.'" *SQIP*, 728 F. Supp. 3d at 453-54 (quoting *Arnold v. Remington Arms Co.*, 2017 WL 9285419, at *2 (E.D. Tex. Feb. 17, 2017)). "Notwithstanding well-known advances in technology and the digitization of data, courts nonetheless continue to consider the relevance and importance of the physical location of these sources." *Id.* at 454. To the extent that C.H. Robinson's documents and data are relevant to this action, *see supra* Section I.E, this information, whether digital or hard-copy, is largely in Minnesota, where C.H. Robinson is based along with many of the employees with knowledge of the customers, carriers, Navisphere Carrier platform, and communications referenced in the Complaint. *See* Minton Decl. ¶¶14, 16-19, 21. In addition, relevant documents and data are in Chicago, Illinois, where C.H. Robinson maintains an office with employees who worked with customers and carriers referenced in the Complaint, and that information is easily accessible in the nearby District of Minnesota. *See id.* ¶¶15, 20. To C.H. Robinson's knowledge, no documents related to C.H. Robinson's contracting with carriers or bidding with customers are in the Eastern District of Texas. *See id.* ¶24.

Moreover, even if it is true that C.H. Robinson "regularly broker[s] freight to Illegal Carriers that traverse this District's major corridors," Compl. ¶23, this is not a case arising from a specific accident in the District involving one of those freight jobs. Instead, this is a case concerning foreign Plaintiffs' alleged lost revenue from bidding on freight jobs. And even though C.H. Robinson maintains an office in Plano, Texas, Compl. ¶21, C.H. Robinson is unaware of any evidence physically stored in that office that would be relevant to this action, Minton Decl. ¶22. Because the sources of proof are more accessible in Minnesota, the first private-interest factor weighs in favor of transfer.

***Availability of the Compulsory Process.*** "The second private factor is the availability of compulsory process to secure the attendance of witnesses" and is focused on "unwilling non-party witnesses" who would be subject to a Rule 45(c)(1) subpoena. *SQIP*, 728 F. Supp. 3d at 455. C.H. Robinson is unaware of any non-party witnesses who reside, are employed, or regularly transact business in person within 100 miles of the Eastern District of Texas or the District of Minnesota. This factor is neutral.

***Cost of Attendance for Willing Witnesses.*** This factor "focuses on the 'cost of attendance for willing witnesses'" and "'is probably the single most important factor in a transfer analysis.'" *SQIP*, 728 F. Supp. 3d at 455 (quoting *Volkswagen of Am.*, 545 F.3d at 315; *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)). As noted, C.H. Robinson has its principal place of business in the District of Minnesota, which is where its corporate officers and other senior leaders are located. *See* Minton Decl. ¶14. Many other witnesses with relevant information are in Minnesota, including employees with knowledge of the customers, carriers, Navisphere Carrier platform, and communications referenced in the Complaint. *See* Minton Decl. ¶¶14, 16-19, 21. And while there are additional employees with knowledge about the carriers referenced in the Complaint in

Chicago, *see id.* ¶¶16, 20, Chicago is significantly closer to the District of Minnesota than to the Eastern District of Texas. *See Volkswagen AG*, 371 F.3d at 204-05 ("[T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). The cost of attendance for the C.H. Robinson witnesses will invariably be lower in Minnesota than it would be in Texas. *See SQIP*, 728 F. Supp. 3d at 455 (concluding that "[t]he District of Minnesota is clearly more convenient for the majority of expected witnesses, including [Minnesota-based Defendant's] corporate officers or designated representative witnesses"). This crucial factor weighs in favor of transfer.

***Other Practical Problems.*** "Practical problems include those that are rationally based on judicial economy." *Garrett*, 429 F. Supp. 3d at 319. As discussed above, severance and transfer of the claims against C.H. Robinson promotes judicial economy while maintaining a single action in this District promotes confusion and inconvenience. *See supra* Sections I.C-D. The final private-interest factor weighs in favor of transfer.

**2. The public interest factors favor transfer.**

The four public interest factors are "(1) the administrative difficulties flowing from court congestion"; "(2) the local interest in having localized interests decided at home"; "(3) the familiarity of the forum with the law that will govern the case"; and "(4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *Garrett*, 429 F. Supp. 3d at 317. While three of these factors are neutral, the District of Minnesota has a stronger interest in this case than the Eastern District of Texas, weighing in favor of transfer.

***Local Interest in Having Localized Interests Decided at Home.*** This factor "regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." *SQIP*, 728 F. Supp. 3d at 457 (quoting *Def. Distributed*, 30 F.4th at 435). "The District of Minnesota has a greater

localized interest in this case than the Eastern District of Texas" because C.H. Robinson "is headquartered in Minnesota," its operations (including overseeing customer accounts and bidding) "occurred in the District of Minnesota, and [most] of [C.H. Robinson's] likely witnesses are there." *Id.*; *see also* Minton Decl. ¶16-19, 21-22. By contrast, Plaintiffs—none of which is from Texas—allege only tangential connections to this District in the form of lost shipping jobs (hauled by third-party carriers, not C.H. Robinson) which happened to pass through this District. *See* Compl. ¶¶27-38. Accordingly, this factor favors transfer.

***The Remaining Factors.*** The final three factors are neutral because C.H. Robinson (1) does not contend that court congestion is relevant here; (2) does not dispute that the Eastern District of Texas and the District of Minnesota are both competent to resolve RICO and Lanham Act cases; and (3) has not identified any conflict of laws issues presented because no foreign law is at issue. *See SQIP*, 728 F. Supp. 3d at 456-57; *Garrett*, 429 F. Supp. 3d at 319-20.

* * *

In sum, three of the four private-interest factors and one public-interest factor favor transferring Plaintiffs' claims against C.H. Robinson to the District of Minnesota while no factors, private- or public-interest, disfavor transfer. The District of Minnesota is clearly more convenient.

**CONCLUSION**

For the foregoing reasons, the Court should sever Plaintiffs' claims against C.H. Robinson and transfer those claims to the District of Minnesota. Alternatively, if the Court declines to sever and transfer the claims against C.H. Robinson, the Court should grant C.H. Robinson's motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6), filed separately today.

Dated: November 19, 2026

Respectfully submitted,

*/s/ Alan Schoenfeld*

Alan Schoenfeld (*pro hac vice*)
NY Bar No. 4500898
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7294 (t)
(212) 230-8888 (f)
alan.schoenfeld@wilmerhale.com

Ronald Machen (*pro hac vice*)
DC Bar No. 447889
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (t)
(202) 663-6363 (f)
ronald.machen@wilmerhale.com

Joseph J. Mueller (*pro hac vice*)
*Lead Attorney*
MA Bar No. 647567
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6396 (t)
(617) 526-5000 (f)
joseph.mueller@wilmerhale.com

Michael E. Jones (State Bar No. 10929400)
Shaun William Hassett (State Bar No. 24074372)
POTTER MINTON PC
102 N. College, Suite 900
Tyler, TX 75701
(903) 597-8311 (t)
(903) 593-0846 (f)
mikejones@potterminton.com
shaunhassett@potterminton.com

*Attorneys for the C.H. Robinson Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2026, a true and correct copy of the above and foregoing document was transmitted to the Clerk of Court using the ECF System for filing. The Clerk of Court will transmit a Notice of Electronic Filing to all counsel of record.

*/s/ Alan Schoenfeld*
Alan Schoenfeld

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for C.H. Robinson has complied with the meet and confer requirement in Local Rule CV-7(h) and that the foregoing motion is opposed by Plaintiffs. On November 18, 2026, Michael Jones and I conferred with counsel for Plaintiffs, J. Travis Underwood, James Wren, Trey Duck, Jessica Underwood, and their colleagues, by telephonic conference. No agreement could be reached. Discussions have conclusively ended in an impasse, leaving the issue of whether the Court should sever Plaintiffs' claims against C.H. Robinson and transfer claims to the District of Minnesota open for the Court to resolve.

*/s/ Alan Schoenfeld*
Alan Schoenfeld