**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| STEVENS TRUCKING CO., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>C.H. ROBINSON COMPANY, INC., d/b/a C.H. ROBINSON WORLDWIDE, ET AL.,<br><br>Defendants. | Case No. 2:26-cv-869-JRG<br><br>Oral Argument Requested |

**DEFENDANTS C.H. ROBINSON WORLDWIDE, INC., C.H. ROBINSON COMPANY, INC., C.H. ROBINSON COMPANY, LLC, & C.H. ROBINSON INTERNATIONAL, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

STATEMENT OF ISSUES .......... 3

STATEMENT OF FACTS .......... 4

A. C.H. Robinson Provides Freight Brokerage Services .......... 4

B. Plaintiffs' Claims .......... 5

LEGAL STANDARD .......... 7

ARGUMENT .......... 7

I. Plaintiffs Fail To State A RICO Claim .......... 7

A. Plaintiffs Fail To Plausibly Allege RICO Standing .......... 7

1. Plaintiffs have not adequately alleged but-for causation. .......... 8

2. Plaintiffs have not adequately alleged proximate causation. .......... 9

B. Plaintiffs Fail To Adequately Plead The Elements Necessary To All RICO Causes Of Action .......... 15

1. Plaintiffs fail to adequately plead a RICO enterprise. .......... 15

2. Plaintiffs fail to adequately plead a pattern of racketeering activity. .......... 17

3. Plaintiffs fail to adequately plead a continuing pattern of racketeering activity. .......... 19

C. Each RICO Claim Fails For Additional Independent Reasons .......... 21

1. Plaintiffs fail to state a claim under 18 U.S.C. §1962(a). .......... 21

2. Plaintiffs fail to state a claim under 18 U.S.C. §1962(b). .......... 22

3. Plaintiffs fail to state a claim under 18 U.S.C. §1962(c). .......... 23

4. Plaintiffs fail to state a claim under 18 U.S.C. §1962(d). .......... 24

II. Plaintiffs Fail To State A Claim Under The Lanham Act .......... 25

CONCLUSION .......... 27

## TABLE OF AUTHORITIES

Page(s)

## CASES

*Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007) ........ *passim*

*Allstate Indem. Co. v. Bhagat*, 164 F.4th 426 (5th Cir. 2026) ........ 8

*Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631 (S.D. Tex. 2016) ........ 15, 16, 24

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) ........ 15, 17, 24

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ........ *passim*

*Blanchard & Co. v. Contursi*, 2000 WL 574590 (E.D. La. May 11, 2000) ........ 22

*Boyle v. United States*, 556 U.S. 938 (2009)), *report and recommendation adopted*, 2016 WL 4198279 (E.D. Tex. Aug. 8, 2016), *aff'd*, 938 F.3d 724 (5th Cir. 2019) ........ 16

*Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639 (2008) ........ 8, 9, 13

*Burzynski v. Aetna Life Ins. Co.*, 989 F.2d 733 (5th Cir. 1993) ........ 19

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) ........ 26

*Cunningham v. Offshore Specialty Fabricators, Inc.*, 543 F. Supp. 2d 614 (E.D. Tex. 2008), *aff'd sub nom. Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759 (5th Cir. 2011) ........ 15, 16

*D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198 (5th Cir.), *cert. denied*, 145 S. Ct. 264 (2024) ........ 7, 15, 19, 20

*Elliott v. Foufas*, 867 F.2d 877 (5th Cir. 1989) ........ 16

*ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672 (E.D. Tex. 2020) ........ 7, 19

*Gentilello v. Rege*, 627 F.3d 540 (5th Cir. 2010) ........ 18

*Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670 (S.D. Tex. 2015) ........ 27

*Gutierrez v. Venegas*, 2021 WL 9314946 (N.D. Tex. Sept. 8, 2021) ........ 23, 24

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ........ 19, 20

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985) ........ 3

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ....................8, 10, 14

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580 (2026) ....................9

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992)....................9, 10, 13

*Hubbard v. Crow*, 2023 WL 10366527 (W.D. Tex. Nov. 20, 2023)....................18

*Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438 (5th Cir. 2013)....................7, 14

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)....................23

*Margetis v. Ferguson*, 2014 WL 174667 (E.D. Tex. Jan. 10, 2014) ....................8

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991)....................3

*Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779 (5th Cir. 2020)....................10, 17

*Moore v. Garner*, 2005 WL 1022088 (E.D. Tex. Jan. 1, 2005)....................25

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015)....................21, 22, 23, 25

*Nat'l Travel Sys., L.P. v. Shorts Travel Mgmt., Inc.*, 2010 WL 11601990 (W.D. Tex. Oct. 7, 2010) ....................25, 26, 27

*Newman v. Smith Cnty.*, 2025 WL 901258 (E.D. Tex. Mar. 25, 2025) ....................18

*Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926 (5th Cir.), *cert. denied*, 537 U.S. 1047 (2002) ....................21

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000)....................25, 26

*Price v. Pinnacle Brands, Inc.*, 138 F.3d 602 (5th Cir. 1998) ....................7

*Shannon v. Ham*, 639 F. App'x 1001 (5th Cir. 2016)....................9

*Tassio v. Onemain Fin., Inc.*, 2016 WL 7799626 (E.D. Tex. Oct. 28, 2016), *report and recommendation adopted*, 2016 WL 7334772 (E.D. Tex. Dec. 19, 2016) ....................16, 24

*Torrey v. Infectious Diseases Soc'y of Am.*, 2018 WL 10124894 (E.D. Tex. Sept. 27, 2018) ....................17, 18

*Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679 (S.D. Tex. 2010)....................22, 23

*Varela v. Gonzales*, 773 F.3d 704 (5th Cir. 2014)....................7, 11, 12

*Walker v. Beaumont Indep. Sch. Dist.*, 2016 WL 3621120 (E.D. Tex. July 6, 2016), *aff'd*, 938 F.3d 724 (5th Cir. 2019) .......... 21

*Walker v. Beaumont Indep. Sch. Dist.*, 2016 WL 6823512 (E.D. Tex. July 13, 2016) .......... 16

*Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958 (5th Cir. 2019) (Oldham, J., dissenting) .......... 1, 3

*Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997) .......... 17

*Wood v. Inc. Vill. of Patchogue of N.Y.*, 311 F. Supp. 2d 344 (E.D.N.Y. 2004) .......... 22

**STATUTES, RULES, AND REGULATIONS**

49 C.F.R. §371.2 .......... 4

15 U.S.C. §1125 .......... 4, 6, 25

18 U.S.C. §1343 .......... 17

18 U.S.C. §1589 .......... 17, 18

18 U.S.C. §1962 .......... *passim*

28 U.S.C. §1404 .......... 1

49 U.S.C. §13102 .......... 4

Fed. R. Civ. P. 8 .......... 2, 18

Fed. R. Civ. P. 9(b) .......... 2, 17, 18

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 3, 4

Defendants C.H. Robinson Worldwide, Inc. and its subsidiaries, C.H. Robinson Company, Inc., C.H. Robinson Company, LLC, and C.H. Robinson International, Inc. (collectively, "C.H. Robinson") respectfully submit this motion to dismiss claims against them under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

For forty years, courts have warned that civil RICO is profligately used as "a weapon against legitimate businessmen in ordinary commercial disputes." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 980 (5th Cir. 2019) (Oldham, J., dissenting) (collecting cases). This case exemplifies that troubling phenomenon. Plaintiffs—a group of trucking companies—compete with C.H. Robinson, a federally licensed freight broker, for access to customers' freight jobs. Facing financial pressure from the high costs of operating as asset-based carriers and from the rise of brokerage-based third-party logistics models, Plaintiffs look to the RICO statute and C.H. Robinson to compensate them for ordinary business losses in the highly competitive long-haul freight market.

Plaintiffs allege that C.H. Robinson's ability to offer customers shipping rates lower than Plaintiffs' is the product of a criminal enterprise. To inflame sentiment against C.H. Robinson, Plaintiffs describe dangers that certain third-party motor carriers allegedly pose for truck drivers working for those carriers and Americans sharing the road with them. But no amount of obfuscation changes the fact that these allegations concern third-party carriers who are neither C.H. Robinson nor parties to this action. Cutting through the noise and focusing on the facts pled about C.H. Robinson, the Complaint falls far short of stating any violation of RICO or the Lanham Act.

C.H. Robinson has separately moved to sever the claims against it and transfer venue pursuant to Rule 21 and 28 U.S.C. §1404. If the Court denies that motion, C.H. Robinson

respectfully submits that multiple, independent deficiencies compel dismissal of Plaintiffs' Complaint pursuant to Rule 12(b)(6).

*First*, Plaintiffs lack statutory standing to bring a RICO claim. The Complaint fails to plausibly allege that any of C.H. Robinson's conduct was either the but-for or proximate cause of Plaintiffs' purported injuries.

*Second*, Plaintiffs fail to plead the elements that every RICO claim requires: a RICO enterprise and a pattern of racketeering activity. The Complaint does not plead an enterprise because its allegations merely establish that C.H. Robinson operates a freight brokerage business that contracts with carriers in arm's length commercial transactions, not that C.H. Robinson and these carriers function as a continuing unit. As for RICO predicates, the Complaint does not plead wire fraud with the particularity Rule 9(b) demands and its conclusory assertion that C.H. Robinson knowingly benefited from forced labor cannot survive even Rule 8's more lenient pleading standard. The Complaint also does not plead a "pattern" of racketeering activity that is either closed- or open-ended.

*Third*, even if Plaintiffs had plausibly alleged standing, the existence of a RICO enterprise, and a pattern of racketeering activity, Plaintiffs' four RICO claims would still fail because they do not sufficiently allege facts to support subsection-specific elements. Plaintiffs identify no racketeering income invested in an enterprise (§1962(a)), no injury resulting from C.H. Robinson's acquisition of an interest in or control of an enterprise (§1962(b)), no facts about C.H. Robinson's participation in and supervision of an enterprise's affairs (§1962(c)), and no agreement to violate RICO (§1962(d)).

*Fourth*, the Lanham Act claim rests on non-actionable puffery, does not identify any specific false statement by C.H. Robinson, and offers nothing more than a bare legal conclusion that any such unidentified statements caused Plaintiffs' injury.

The RICO statute makes for "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Waste Mgmt. of La.*, 920 F.3d at 980 (Oldham, J., dissenting) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)). It "punishes defendants with treble damages, attorney's fees, and the 'stigmatizing' label 'racketeer.'" *Id.* "That alone gives even 'spurious claims'"—like the ones here—"tantalizing 'in terrorem settlement value.'" *Id.* (quoting *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 399 n.16 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985)). Rule 12(b)(6) motions to dismiss are custom-built to address RICO complaints like this one. The case should be dismissed.

## STATEMENT OF ISSUES

Pursuant to Local Rule CV-7(a)(1), C.H. Robinson submits the following issues to be decided by the Court on this motion:

1. Should the Court dismiss Plaintiffs' RICO claims (Counts I-IV) pursuant to Rule 12(b)(6) because Plaintiffs failed to adequately plead that C.H. Robinson's conduct was the proximate cause of Plaintiffs' injuries?
2. Should the Court dismiss Plaintiffs' RICO claims (Counts I-IV) pursuant to Rule 12(b)(6) because Plaintiffs failed to plausibly allege an "enterprise" and/or a "pattern of racketeering activity"?
3. Should the Court dismiss Plaintiffs' claim under 18 U.S.C. §1962(a) (Count I) pursuant to Rule 12(b)(6) because Plaintiffs failed to plausibly allege any injuries resulting from C.H. Robinson's use or investment of racketeering income in operating a RICO enterprise?

4. Should the Court dismiss Plaintiffs' claim under 18 U.S.C. §1962(b) (Count II) pursuant to Rule 12(b)(6) because Plaintiffs failed to plausibly allege any injuries resulting from C.H. Robinson's acquisition of an interest in or control of a RICO enterprise?
5. Should the Court dismiss Plaintiffs' claim under 18 U.S.C. §1962(c) (Count III) pursuant to Rule 12(b)(6) because Plaintiffs failed to plausibly allege C.H. Robinson's participation in an enterprise's affairs?
6. Should the Court dismiss Plaintiffs' claim under 18 U.S.C. §1962(d) (Count IV) pursuant to Rule 12(b)(6) because Plaintiffs failed to plausibly allege any agreement to violate the RICO statute?
7. Should the Court dismiss Plaintiffs' claim under 15 U.S.C. §1125(a)(1)(B) (Count V) because Plaintiffs failed to plausibly allege any actionable false advertising?

## STATEMENT OF FACTS[1]

### A. C.H. Robinson Provides Freight Brokerage Services

C.H. Robinson[2] is a third-party logistics services provider based in Minnesota, offering end-to-end solutions for companies needing logistical and transportation services. Among the solutions that C.H. Robinson offers is a freight brokerage service, which connects businesses that need freight delivered ("shippers") with a network of hundreds of thousands of contract carriers who can help meet the shippers' needs. *See* Compl. ¶50; *see also* 49 C.F.R. §371.2 and 49 U.S.C.

---

[1] As required and only for purposes of this motion, C.H. Robinson refers to facts taken from the Complaint without admitting their truth.

[2] Defendants are C.H. Robinson Worldwide, Inc. and its subsidiaries, C.H. Robinson Company, Inc., C.H. Robinson Company, LLC, and C.H. Robinson International, Inc. C.H. Robinson International, Inc. works with international shipments via C.H. Robinson's Global Forwarding business. It does not provide freight shipping services in the United States, which is the subject of the Complaint. *See generally* Dkt. 1, Compl. Plaintiffs plead no allegations concerning C.H. Robinson's Global Forwarding business or any international shipments. The Complaint nevertheless refers to all four C.H. Robinson entities collectively as "CH Robinson" and does not allege any conduct by any one of them individually. *See generally id.*

§13102 (federal definitions of "broker"). As a freight broker, C.H. Robinson does not directly employ drivers to deliver its customers' freight or own any trucks. Compl. ¶62. Instead, it draws on a network of third-party motor carrier companies with whom it contracts to move goods for its shipping customers.

C.H. Robinson facilitates the transportation of thousands of customer shipments each day with the help of its carrier network. For shippers, freight brokers like C.H. Robinson provide tailored, cost-effective solutions to meet their delivery needs at scale, leveraging expertise on the supply chain, a large network of vetted carriers, and advanced technology to help customers address their shipping challenges. *See* Compl. ¶¶62-63. For carriers and their drivers, C.H. Robinson provides streamlined access to a wide variety of customers whose freight many carriers would not be able to secure on their own, including through a platform called "Navisphere" that allows carriers to search for and bid on freight delivery jobs. *Id.* ¶146.

**B. Plaintiffs' Claims**

Plaintiffs are a group of six asset-based carriers who own their trucks and employ their own drivers to deliver freight. Compl. ¶59. Although C.H. Robinson is not itself a trucking company and relies on third-party carriers, *id.* ¶62, Plaintiffs allege that they compete with C.H. Robinson for business in the long-haul freight market because Plaintiffs and C.H. Robinson each bid directly with shippers for freight jobs, *id.* ¶11.

Plaintiffs allege that C.H. Robinson's ability to offer shippers highly competitive rates and Plaintiffs' loss of business are the products of a criminal enterprise. *See* Compl. ¶¶2-4. Plaintiffs claim that C.H. Robinson has been able to secure more business from shippers than Plaintiffs have by relying on third-party carriers who engage in a variety of regulatory and labor law violations, providing C.H. Robinson with access to low-cost labor. *See, e.g.*, *id.* ¶¶1-3, 179, 184. According to Plaintiffs, the lower costs allow C.H. Robinson to underbid other carriers like Plaintiffs. *See id.*

¶¶137, 145, 164. Plaintiffs also allege that C.H. Robinson deceives its customers by representing that it can provide cheaper, quicker services while concealing its reliance on third-party carriers with safety issues and regulatory violations. *See id.* ¶¶191-96, 208-09, 212.

Plaintiffs attribute their loss of business from shippers, including Johnson Controls, Armacell, and PepsiCo, to C.H. Robinson. *See* Compl. ¶¶207-17. Notably, though, Plaintiffs plead no facts that show that C.H. Robinson's supposedly illegal conduct led directly to Plaintiffs losing this business. For example, although each Plaintiff purports to identify "quantifiable" damages resulting from C.H. Robinson's alleged scheme, *id.* ¶331, including describing the number of freight loads and shipping routes ("lanes"), *id.* ¶¶332-44, Plaintiffs allege no facts showing that C.H. Robinson bid on those same lanes and loads, much less that C.H. Robinson only secured them as a result of misconduct.

Nevertheless, based on these allegations, Plaintiffs bring four claims under the RICO statute and one claim under the Lanham Act. Specifically, Plaintiffs allege that C.H. Robinson violated (1) 18 U.S.C. §1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity in the acquisition, establishment, or operation of an enterprise, Compl. ¶¶282-84; (2) 18 U.S.C. §1962(b), which makes it unlawful to acquire or maintain any interest in or control of an enterprise through a pattern of racketeering, *id*. ¶¶289-94; (3) 18 U.S.C. §1962(c), which makes it unlawful for anyone associated with a RICO enterprise to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, *id.* ¶¶296-302; (4) 18 U.S.C. §1962(d), which makes it unlawful to conspire to violate one of the other RICO subsections, *id.* ¶¶304-06; and (5) 15 U.S.C. §1125(a)(1)(B) (Lanham Act), which prohibits false advertising, *id.* ¶¶308-24.

Plaintiffs allege that each violation caused them the same injury: lost business, diminished market share, and exclusion from the freight market. *See* Compl. ¶¶287, 294, 302, 306, 325.

## LEGAL STANDARD

The Fifth Circuit has explained that recovering under RICO "is often a challenging undertaking," and that "[p]roblems typically arise at the pleadings stage, as courts are hesitant to find RICO violations, and plaintiffs have difficulty alleging them." *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 204 (5th Cir.), *cert. denied*, 145 S. Ct. 264 (2024). The facts pleaded are presumed true, "but legal conclusions that lack factual support are not entitled to the same presumption." *ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 692 (E.D. Tex. 2020) (dismissing RICO claims for failure to plead RICO predicate acts and to include more than conclusory allegations of a pattern of racketeering). The Court "need not accept … conclusory allegations" about plaintiffs' purported RICO injury or unsupported assertions that an alleged RICO violation caused that injury. *Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014). The Court "must analyze the facts of the [complaint] to determine whether the [plaintiffs'] theory of [their RICO injury] is plausible and whether, under that theory, the alleged RICO 'violation led *directly* to the [plaintiffs'] injuries.'" *Id.* (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). RICO pleading requirements "ha[ve] particular resonance when applied to claims brought by economic competitors." *Anza*, 547 U.S. at 460.

## ARGUMENT

### I. Plaintiffs Fail To State A RICO Claim

#### A. Plaintiffs Fail To Plausibly Allege RICO Standing

Plaintiffs "must establish standing to bring a civil RICO claim," including plausibly alleging "injury and causation." *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013) (citing *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th

Cir. 1998)); *see also Margetis v. Ferguson*, 2014 WL 174667, at *6 (E.D. Tex. Jan. 10, 2014) (dismissing RICO claims for failure to "show injury to satisfy the RICO standing requirement").

With respect to causation, "the plaintiff is required to show that a RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (plurality opinion) (cleaned up). Here, Plaintiffs fail to show either. Setting aside the conclusory, boilerplate allegations about the trucking industry at large and about purported misconduct by third parties who are not defendants here, the Complaint alleges that "[a]ll Plaintiffs lost significant business … as a result of CH Robinson's illegal operations and misrepresentations." Compl. ¶218; *see also id.* ¶¶287, 294, 302, 306. This alleged link between C.H. Robinson's conduct and Plaintiffs' purported harm is far too attenuated to establish either (1) but-for causation or (2) proximate causation, as RICO standing requires.

**1. Plaintiffs have not adequately alleged but-for causation.**

To allege but-for causation, a plaintiff must plead "that the harm would not have occurred absent the defendant's conduct." *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 434 (5th Cir. 2026). Here, Plaintiffs allege harm from the loss of certain freight lanes and loads from certain customers. Compl. ¶¶332-46. They attribute that harm to C.H. Robinson's purported reliance on wire fraud and forced labor. *Id.* ¶¶286-87, 293-94, 301-02, 306. But Plaintiffs lack nonconclusory allegations about how and why customers awarded the freight lanes and loads in question. The Complaint does not support an inference that customers would have, or even might have, awarded Plaintiffs the lanes and loads they wanted if C.H. Robinson had not engaged in the challenged conduct.

This stands in stark contrast to the facts of *Bridge v. Phoenix Bond & Indemnity Co.*, where the Supreme Court found that the plaintiffs plausibly alleged causation against their competitors. 553 U.S. 639 (2008). There, the plaintiffs and defendants competed against one another for valuable tax liens in an auction where the bidders were only allowed one bid each. *See id.* at 642-

44. Because multiple bidders, including the plaintiffs and defendants, submitted the identical lowest bids, the auction allocated the liens on a rotating basis. Under these circumstances, both but-for and proximate causation were plausibly pled by allegations that the defendants fraudulently submitted multiple bids through undisclosed agents, thus stacking the pool of bids in their favor, and diminishing the plaintiffs' opportunity to secure the liens. *Id.* In *Bridge*, absent the fraudulent bids, the plaintiffs and defendants in would have enjoyed an equal opportunity to secure the liens because they submitted the same bids.

That clear but-for causation is missing here. According to Plaintiffs' allegations, customers considered different, competing bids from Plaintiffs, C.H. Robinson, TQL, and potentially other competitors, and the Complaint fails to plausibly allege that Plaintiffs would have had winning bids absent C.H. Robinson allegedly bidding on the same lanes and loads using rates that C.H. Robinson set directly in response to depressed labor costs. As pled, Plaintiffs still could have lost business to competitors for reasons other than C.H. Robinson's alleged reliance on wire fraud or forced labor. Because the Complaint has not "rule[d] out obvious alternative explanations" for Plaintiffs' lost business, Plaintiffs failed "to nudge [their] claim across the line from conceivable to plausible." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589-90 (2026) (cleaned up).

**2. Plaintiffs have not adequately alleged proximate causation.**

Plaintiffs also fail to adequately plead proximate causation. That requirement demands Plaintiffs demonstrate "some direct relation between the injury asserted and the injurious conduct alleged." *Shannon v. Ham*, 639 F. App'x 1001, 1003 (5th Cir. 2016) (cleaned up); *see also Anza*, 547 U.S. at 461. A link that is "too remote," "purely contingent," or "indirect[]" is insufficient. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 271, 274 (1992). And "[i]f some other conduct directly caused the harm, the plaintiff cannot sustain a RICO claim." *Molina-Aranda v. Black*

*Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020) (citing *Hemi Grp., LLC*, 559 U.S. at 11). After all, "[a]llowing [RICO] suits by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits." *Holmes*, 503 U.S. at 274 (cleaned up). These well-established principles require the dismissal of the RICO claims because Plaintiffs fail to allege their purported injuries (lost freight lane contracts) were proximately caused by the RICO predicate acts they allege of C.H. Robinson (i.e., making misrepresentations to customers in electronic bids (wire fraud) and financially benefitting from forced labor carried out by third-party carriers, *see, e.g.*, Compl. ¶242).

The cause of Plaintiffs' lost business, instead, "is a set of actions" by third-party customers "entirely distinct from the alleged RICO violation[s]." *Anza*, 547 U.S. at 458. Plaintiffs' own allegations show that third-party customers solicit bids for freight lanes and select brokers and/or carriers to transport, or arrange the transportation of, their goods. *See, e.g.*, Compl. ¶207 (admitting that Johnson Controls and Armacell have selected Plaintiffs for jobs); *id.* ¶245 (admitting that "shipping customers invite or allow Defendants to bid on their lanes or loads"). Plaintiffs lost contracts for freight lanes after customers decided to award them to competitors. *See, e.g.*, *id.* ¶210 ("Johnson Controls … ma[de] the decision to divert business from Stevens and Western Flyer."); *id.* ¶212 ("Armacell … ma[de] the decision to divert business from Stevens."); *id.* ¶214 (alleging that Kroger's grading of Christenson's bids "result[ed] in the rejection of" Christenson's bids). But the Complaint itself acknowledges that shippers consider a range of factors when selecting a broker or carrier, such as safety, speed of delivery, shipping capacity, and insurance coverage. *See, e.g.*, *id.* ¶¶208, 245. Plaintiffs can only speculate as to the number and nature of bids each

third-party customer considered and the criteria each customer used to award the contracts Plaintiffs claim to have lost.

The Fifth Circuit's decision in *Varela v. Gonzales*, 773 F.3d 704, is instructive here. The plaintiffs in *Varela* alleged that their former employers transported, harbored, and hired undocumented workers (RICO predicates), which injured the plaintiffs by depressing their wages. *See id.* at 706. In affirming the dismissal of the complaint, the Fifth Circuit explained that general allegations about the presence of undocumented workers in the market, without non-conclusory facts identifying defendants' market power in quantifiable terms, were not enough to plead a direct connection between the defendants' conduct (hiring of undocumented workers) and the plaintiffs' injuries (depressed wages) because "it is impossible to determine whether the hiring of undocumented workers could have had any plausible effect on overall wages." *Id.* at 710-11.

The Complaint here suffers from the same defects. For example, Plaintiffs allege in conclusory fashion that "[b]rokers … have increased their margins to 15% to 20%," while "Defendants target net margins of over 15%," Compl. ¶155, which Plaintiffs conclude must be the result of "Defendants exploit[ing] their Illegal Carrier partners' depressed labor costs to bid lower while expanding their margins," *id.* ¶156. Plaintiffs also allege that "CH Robinson was able to underbid Plaintiffs on high-value accounts" by working with carriers with lower labor costs. *Id.* ¶164. But this "conclusion is not self-evident," and "plaintiffs have alleged no facts to render it plausible." *Varela*, 773 F.3d at 711 (cleaned up). There is no allegation that C.H. Robinson used an "Illegal Carrier" with "depressed labor costs" for one of the loads that C.H. Robinson won over one of the Plaintiffs. For example, Plaintiffs include extensive allegations about Super Ego's alleged safety and labor violations, *see* Compl. ¶¶92-136, 271-74, but nowhere allege that C.H. Robinson relied on Super Ego to haul one of the loads that Plaintiffs purportedly lost to C.H.

Robinson. Plaintiffs only make the broad claim that C.H. Robinson has worked with Super Ego. *See, e.g.*, *id.* ¶¶160-61, 238. That is not enough to establish a direct, causal relationship between Super Ego's alleged misconduct, C.H. Robinson's bidding on a specific job, and one of the Plaintiffs losing that job. Even where "Confidential Witnesses" purportedly admit to driving for an "Illegal Carrier" and hauling loads brokered by C.H. Robinson, *see id.* ¶101, there is no allegation tying those drivers and loads to Plaintiffs' injuries.

Moreover, Plaintiffs offer no effort to quantify C.H. Robinson's specific ability to influence the market for freight shipping rates, no discussion of other factors that customers did or did not consider when selecting a freight broker or carrier and how much those other factors did or did not contribute to Plaintiffs' loss of business, and no identification of what percentage of bids C.H. Robinson specifically took from Plaintiffs *as a result of* C.H. Robinson's alleged misconduct. *See Varela*, 773 F.3d at 710-11 (concluding that plaintiffs "failed to sufficiently allege proximate cause" where they "make no attempt to define th[e] market," did not "describe the relevant labor market in quantifiable terms," and did not include any "allegation as to the proportion of undocumented workers within [defendants'] workforce"). And even where Plaintiffs identify a specific number of lanes that they purportedly "lost," *see, e.g.*, Compl. ¶¶332-45, there are no allegations that the Plaintiffs lost those specific loads to C.H. Robinson or that C.H. Robinson used an "Illegal Carrier" for those same lanes *and* fraudulently concealed that from those customers.

There is "a second discontinuity between the RICO violation and the asserted injury": Plaintiffs' "lost sales could have resulted from factors other than [C.H. Robinson's] alleged acts of fraud" and financially benefitting from forced labor. *Anza*, 547 U.S. at 459. Where a RICO claim is premised on a competitor gaining an economic advantage, *Anza* emphasizes that "[b]usinesses lose and gain customers for many reasons, and it would require a complex

assessment to establish what portion of [the plaintiff's] lost sales were the product of [the defendant's] decreased prices." *Id.* If Plaintiffs are allowed to maintain their claims here, the Court would need to determine whether, and to what extent, C.H. Robinson's alleged racketeering activity affected its bids or costs, and then isolate the extent to which Plaintiffs' asserted lost contracts, increased costs, or lost market share resulted from that effect, rather than from ordinary competition, customer preferences, or other market forces. But "[t]he direct-relation requirement avoids the difficulties associated with attempting 'to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.'" *Bridge*, 553 U.S. at 654 (quoting *Holmes*, 503 U.S. at 269).

The complex and speculative nature of this analysis again sets this case apart from a case like *Bridge.* As discussed, the plaintiffs in *Bridge* alleged that the defendants were only able to secure a disproportionate number of liens at auction by fraudulently submitting multiple lowest bids, which in turn denied those same liens to the plaintiffs. *See* 553 U.S. at 642-43. Given that the liens *had* to be allocated "'on a rotational basis' in order to ensure that liens [were] apportioned fairly among" the lowest bidders, "[i]t was a foreseeable and natural consequence of [defendants'] scheme to obtain more liens for themselves that other bidders would obtain fewer liens." *Id.* at 643, 658. Here, by contrast, even if C.H. Robinson committed the predicate acts that Plaintiffs allege, no allegations in the Complaint suggest that C.H. Robinson then had to underbid Plaintiffs, or that any customer had to award a contract to C.H. Robinson.

Moreover, to the extent Plaintiffs' claims are premised on future contracts or market share that they *may* lose to C.H. Robinson, *see, e.g.*, Compl. ¶330, "the speculative nature of the proceedings that would follow if [Plaintiffs] were permitted to maintain [their] claim[s]" is further illustration of "why [Plaintiffs'] alleged injury was not the direct result of a RICO violation" and

should be dismissed. *Anza*, 547 U.S. at 459. If Plaintiffs' claims were allowed to proceed, the Court would have to speculate as to the value of those contracts and the reasons why Plaintiffs may not secure them in the future, if in fact they do not. "The element of proximate causation … is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation," and Plaintiffs "cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Id.* at 460.

Lastly, further confirming that Plaintiffs have not established that C.H. Robinson's alleged §1589 violation was the proximate cause of Plaintiffs' injuries, the Court in *Anza* also explained that "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." 547 U.S. at 460; *see also Hemi Grp., LLC*, 559 U.S. at 11-12 ("One consideration we have highlighted as relevant to the RICO 'direct relationship' requirement is whether better situated plaintiffs would have an incentive to sue."). So too here. The Complaint contains no allegations as to why exploited drivers could not try to bring their own claims against those who exploit them. "There is no need to broaden the universe of actionable harms to permit RICO suits by parties"—like Plaintiffs here—"who have been injured only indirectly." *Anza*, 547 U.S. at 460.

In short, even accepting the Complaint's allegations as true, Plaintiffs do not plausibly allege that C.H. Robinson's purported RICO violations directly caused their claimed injuries. Those injuries instead depend on intervening actions by third parties and speculation about the reasons for Plaintiffs' alleged loss of business and increased operating costs. Accordingly, Plaintiffs failed to satisfy RICO's proximate-cause requirement and "failed to sufficiently allege facts that support standing to bring a civil RICO claim." *Jackson*, 546 F. App'x at 444.

### B. Plaintiffs Fail To Adequately Plead The Elements Necessary To All RICO Causes Of Action

Even if Plaintiffs establish that they have RICO standing (they do not), for each of Plaintiffs' four RICO claims, they must allege: "'(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *D&T Partners, L.L.C.*, 98 F.4th at 204-05 (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). Absent here are any plausible allegations of a RICO enterprise, predicate racketeering activity, and a pattern of racketeering.

#### 1. Plaintiffs fail to adequately plead a RICO enterprise.

The enterprise element requires allegations of "an ongoing organization, formal or informal, and … that the various associates function as a continuing unit." *Cunningham v. Offshore Specialty Fabricators, Inc.*, 543 F. Supp. 2d 614, 633 (E.D. Tex. 2008), *aff'd sub nom. Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759 (5th Cir. 2011). The enterprise "must have an existence separate and apart from the pattern of racketeering." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015). "In other words, a plaintiff must explain the functioning of alleged enterprises to satisfy the pleading standard for the enterprise element." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 652 (S.D. Tex. 2016).

With respect to C.H. Robinson, Plaintiffs attempt to plead two enterprises, each of which fails. First, Plaintiffs label the network of motor carriers with which C.H. Robinson contracts a "brokerage enterprise[]," that is "operate[d] and control[led]" by C.H. Robinson. Compl. ¶235. Second, Plaintiffs allege an "association-in-fact enterprise" that is "jointly operate[d]" by C.H. Robinson and the so-called Illegal Carriers. *Id.* ¶236.

Plaintiffs' allegations of both "enterprises" seek to impugn ordinary commercial relationships—C.H. Robinson's operation of a freight brokerage business that contracts at arm's

length with independent carriers to transport loads for shippers. As to the first enterprise of C.H. Robinson's network of carriers, it is facially implausible that C.H. Robinson and the thousands of carriers it hires all "function as a continuing unit." *Cunningham*, 543 F. Supp. 2d at 633. And while, in support of both alleged enterprises, Plaintiffs make bald assertions that C.H. Robinson and carriers seek to "maximize profits," and rely on "Illegal Carriers …[to] haul loads for Defendants at unlawfully suppressed rates," Compl. ¶¶235, 237, such statements fall far short of Plaintiffs' burden to "plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise," *Cunningham*, 543 F. Supp. 2d at 633 (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)).

The Complaint says nothing specific about how these supposed enterprises functioned, if they did exist. *See Benhamou*, 190 F. Supp. 3d at 652. It does not identify the role, fixed or changing, that any C.H. Robinson entity played, as distinct from the carriers, nor does it allege any decision-making structure, whether "hierarchical" or "on an ad hoc basis," among this supposed enterprise. *Walker v. Beaumont Indep. Sch. Dist.*, 2016 WL 6823512, at *3 (E.D. Tex. July 13, 2016) (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)), *report and recommendation adopted*, 2016 WL 4198279 (E.D. Tex. Aug. 8, 2016), *aff'd*, 938 F.3d 724 (5th Cir. 2019). Plaintiffs allege only that "Defendants invite Illegal Carriers to participate in the enterprise," Compl. ¶235, which fails to establish even that any carrier actually participated in the purported enterprise, much less "acted with" C.H. Robinson, *see Tassio v. Onemain Fin., Inc.*, 2016 WL 7799626, at *5 (E.D. Tex. Oct. 28, 2016) (finding no enterprise where "there is no allegation that either Defendant acted with members of the alleged … enterprise, [or] an allegation that either Defendant had a role in directing even some part of the alleged enterprise's affairs"), *report and recommendation adopted*, 2016 WL 7334772 (E.D. Tex. Dec. 19, 2016). The Complaint just

parrots cursory claims about a pattern of racketeering, so the pleading also fails to allege the existence of an enterprise "separate and apart from the pattern of racketeering." *Plambeck*, 802 F.3d at 673. Plaintiffs have not pled any RICO enterprise. The Complaint fails on this basis alone.

**2. Plaintiffs fail to adequately plead a pattern of racketeering activity.**

Plaintiffs' RICO claims all require allegations of a "pattern of racketeering activity," 18 U.S.C. §1962(a)-(c), including Rule 9(b)-compliant allegations that C.H. Robinson committed wire fraud (18 U.S.C. §1343), plausible allegations that C.H. Robinson violated 18 U.S.C. §1589(b), and plausible allegations that any violations constitute a pattern of racketeering activity. Plaintiffs fail at each turn.

**a) The allegations of wire fraud do not satisfy the heightened requirements of Rule 9(b).**

To plead wire fraud as a predicate act, Plaintiffs must meet Rule 9(b)'s heightened pleading standard and "'must state with particularity the circumstances' of the allegedly fraudulent conduct." *Molina-Aranda*, 983 F.3d at 784 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)); *see also Torrey v. Infectious Diseases Soc'y of Am.*, 2018 WL 10124894, at *14 (E.D. Tex. Sept. 27, 2018). Plaintiffs must "describe, in short, 'the who, what, when, and where' supporting their fraud allegations." *Molina-Aranda*, 983 F.3d at 784. Failure "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" warrants dismissal. *Williams*, 112 F.3d at 177.

Plaintiffs' allegations fail to identify any particular disclosure or representation that a specific C.H. Robinson entity made in connection with a scheme to defraud; a specific date on which such a disclosure was made; the recipient(s) of that disclosure; and how that disclosure was material to the fraudulent scheme. Notably missing is any allegation identifying which of the four

C.H. Robinson entities (if any) purportedly engaged in this wire fraud. Plaintiffs instead rely on impermissible group pleading, *see Newman v. Smith Cnty.*, 2025 WL 901258, at *1 (E.D. Tex. Mar. 25, 2025) ("The Fifth Circuit has … spoken out against group pleading and lumping defendants together when applying other legal frameworks, some with heightened pleading requirements," including "in the RICO context"), making generalized allegations that lump Defendants together and broadly reference unspecified bid submissions, Compl. ¶249, contracts with shippers, *id.* ¶265, SEC filings, advertisements, and other communications, *id.* ¶266. Without identifying the particular allegedly fraudulent statements and specific speakers, those allegations fail to satisfy Rule 9(b)'s particularity requirement and fail to establish a requisite predicate act. *See Torrey*, 2018 WL 10124894, at *14 (plaintiffs do not plead racketeering activity where they "do not allege facts specifying each Defendants' contributions to the fraud" such as "when the fraudulent communications were made and between whom these communications were made").

**b) The allegations of benefitting from forced labor are wholly conclusory.**

Even under Rule 8's more lenient pleading standard, Plaintiffs fail to adequately plead that C.H. Robinson violated 18 U.S.C. §1589(b). *See* Compl. ¶¶242, 275-76. Stating a violation of 18 U.S.C. §1589(b) requires "adequately plead[ing] that the defendant knowingly benefitted from participation in a forced labor or forced services venture." *Hubbard v. Crow*, 2023 WL 10366527, at *11 (W.D. Tex. Nov. 20, 2023). The Complaint alleges in conclusory fashion that "Defendants knew the only way they could obtain bids at the rates they were offering was if they had a carrier partner" who relied on "forced labor." Compl. ¶275; *see also id.* ¶¶184, 193, 331. Plaintiffs' *ipse dixit* that Defendants could only offer low-rate bids by relying on third parties' "forced labor" is precisely the kind of "conclusory allegation[]" or "unwarranted factual inference[]" that courts do not accept as true. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). Here, there are no alleged

facts identifying in what manner any particular C.H. Robinson entity, as opposed to TQL, benefitted from the purported "forced labor," or even knew about it.

**3. Plaintiffs fail to adequately plead a continuing pattern of racketeering activity.**

Even if Plaintiffs had pleaded predicate acts, they still have not alleged a "pattern." *See Burzynski v. Aetna Life Ins. Co.*, 989 F.2d 733, 742 (5th Cir. 1993). That requires facts showing "both that the predicate acts are [1] related to each other and that [2] they either constitute or threaten long-term criminal activity." *Id.* (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Continuity can be shown over a closed period or through an open-ended threat of repetition. *See ESPOT*, 492 F. Supp. 3d at 693. Plaintiffs do not say which theory they seek to rely on, but either way, their allegations fail.

In assessing whether there is closed-ended continuity, courts in the Fifth Circuit consider (1) whether the alleged misconduct occurred "over a 'substantial period of time,'" *D&T Partners*, 98 F.4th at 206 (quoting *H.J. Inc.*, 492 U.S. at 242); (2) whether there was "systematic victimization" of many people as opposed to a "limited" number of victims, *id.*; and (3) "whether the unlawful conduct concerns one or multiple schemes" with "numerous schemes … tend[ing] to support" a finding of closed-ended continuity, *id.* at 207. In *Abraham v. Singh*, for example, the Fifth Circuit concluded that the plaintiffs adequately alleged continuity because there were hundreds of individuals whom the defendants themselves victimized over several years by luring them to the U.S. with fraudulent visas and exploiting them. 480 F.3d at 356.

There is no similar allegation here of C.H. Robinson's own conduct leading to systematic harm to "multiple victims." *Id.* At most, the Complaint suggests that third-party carriers, not C.H. Robinson, may have engaged in conduct like that of defendants in *Abraham*. Nor are there any allegations that C.H. Robinson engaged in multiple schemes like in *Abraham*, where "the

allegations include not just Plaintiffs' recruitment in India but also their treatment in the United States." *Id.* At most, the Complaint allegations suggest that C.H. Robinson made representations to customers to secure business, *see, e.g.*, Compl. ¶¶246, 259, all as part of a single "scheme" to maximize profits, *id.* ¶¶235-36. Even then, however, the Complaint is devoid of any allegations about how C.H. Robinson's customers were victimized (rather, it alleges they paid lower prices to ship their goods).

In contrast to *Abraham*, in *D&T Partners, L.L.C. v. Baymark Partners Management, L.L.C.*, the Fifth Circuit concluded that there was no continuity despite the plaintiff alleging "that Defendants' fraudulent scheme 'duped' twenty-four victims in its effort to steal [a competitor's trade secrets and] assets," because "the complaint [did] not allege that the victims were targeted repeatedly through broad-based criminal conduct" and instead only suggested that "the alleged victims suffered a derivative injury stemming from [the competitor], who was the only targeted victim of the underlying transaction." 98 F.4th at 207. Here, Plaintiffs too allege "a derivative injury," stemming from C.H. Robinson's interactions with third-party customers, and the Complaint lacks allegations of "systematic victimization" of "multiple victims." *Id.* at 206-07. Thus, "the nature and singular objective of the underlying transaction do not support a finding of closed-ended continuity." *Id.* at 208.

Plaintiffs fare no better under a theory of open-ended continuity, which exists when "a threat of continuing criminal activity extends indefinitely into the future." *D&T Partners*, 98 F.4th at 208. Open-ended continuity can be established by showing "that the predicate acts 'are a regular way of conducting defendant's ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 208-09 (quoting *H.J. Inc.*, 492 U.S. at 243). Here, Plaintiffs do not plausibly allege a threat of any predicate act continuing indefinitely into the

future. Plaintiffs assert that Defendants used Super Ego and other challenged carriers "from 2021 to the present," Compl. ¶251, but contracting with a carrier is not in itself a criminal predicate act. The only other instance where Plaintiffs expressly plead that conduct is "continuous, systematic, and ongoing" is an allegation related to "transmission of doctored logs," *id.* ¶255, conduct that is undertaken by third-party carriers who are not parties to this action, and thus not C.H. Robinson's predicate acts. *See id.* ¶¶251-53. As no other allegations suggest that C.H. Robinson's predicate acts will continue indefinitely, Plaintiffs failed to plausibly allege a pattern of racketeering activity.

### C. Each RICO Claim Fails For Additional Independent Reasons

Beyond their failure to allege the common elements of their RICO claims, Plaintiffs fail to adequately plead the elements required to state a claim under each subsection of the RICO statute. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 201-02 (5th Cir. 2015) (affirming dismissal of claims under 18 U.S.C. §§1962(a)-(d) where "[t]he district court found that [plaintiff] presented sufficient facts to plead a pattern of racketeering activity, but not the individual RICO subsections").

#### 1. Plaintiffs fail to state a claim under 18 U.S.C. §1962(a).

To proceed with their §1962(a) claim, Plaintiffs must show C.H. Robinson's "derivation of income from a pattern of racketeering activity" and "the use of any part of that income in acquiring an interest in or operating the enterprise." *Walker v. Beaumont Indep. Sch. Dist.*, 2016 WL 3621120, at *5 (E.D. Tex. July 6, 2016), *aff'd*, 938 F.3d 724 (5th Cir. 2019). Plaintiffs also "must plead that [they] ha[ve] suffered an injury that 'flow[s] from the use or investment of racketeering income.'" *Id.* (quoting *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929-30 (5th Cir.), *cert. denied*, 537 U.S. 1047 (2002)).

"[C]ourts within the circuit have generally rejected Section 1962(a) claims based upon allegations that the defendant merely reinvested the proceeds into its business for purposes of

perpetuation or expansion." *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 700 (S.D. Tex. 2010) (collecting cases). That is precisely what Plaintiffs allege here. They allege that they were injured because "the reinvestment of unlawful proceeds allowed Defendants to expand enterprise capacity, underbid … competitors, and maintain freight market positions." Compl. ¶287; *see also id.* ¶284. Having done nothing more than allege that C.H. Robinson used its business income to continue to run its business, Plaintiffs' claim under §1962(a) should be dismissed. *See Vanderbilt Mortg.*, 735 F. Supp. 2d at 701 (dismissing §1962(a) claim where the only allegations were "that Defendants used the funds obtained from the predicate acts of fraud and reinvested it in the enterprise, thus allowing the enterprise to continue").

**2. Plaintiffs fail to state a claim under 18 U.S.C. §1962(b).**

For their §1962(b) claim, "[Plaintiffs] ha[ve] to show that [their] injuries 'were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity'—a nexus requirement." *N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 202 (quoting *Abraham*, 480 F.3d at 357). "The injury caused by the acquisition or maintenance [of a defendant's interest or control in an alleged enterprise] must be distinct from the injury caused by the predicate acts under Section 1962(b)." *Vanderbilt Mortg.*, 735 F. Supp. 2d at 701 (quoting *Blanchard & Co. v. Contursi*, 2000 WL 574590, at *2 (E.D. La. May 11, 2000)). After all, "the purpose of Section 1962(b) is 'to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking.'" *Id.* (quoting *Wood v. Inc. Vill. of Patchogue of N.Y.*, 311 F. Supp. 2d 344, 356 (E.D.N.Y. 2004)).

The Complaint alleges in conclusory fashion that "Plaintiffs suffered harm as a result of Defendants' control of the enterprise, not merely from the predicate acts themselves." Compl. ¶294. That is not enough. Nowhere do Plaintiffs explain how C.H. Robinson acquiring or maintaining control of the alleged enterprise proximately caused Plaintiffs to lose freight contracts

and market share. For example, there is no allegation that Defendants instituted a takeover of a legitimate business through racketeering and then maintained that control through racketeering activity, which is the quintessential case under Section 1962(b). Instead, the Complaint allegations suggest, at most, that Plaintiffs were injured by customers' decisions to select alternative carriers, not that Plaintiffs' injuries resulted from C.H. Robinson "gaining an interest in, or control of, the enterprise." *N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 202. Because the Complaint "'do[es] not suggest a distinct injury to [Plaintiffs] by virtue of [C.H. Robinson] acquiring or maintaining an enterprise," the claim under §1962(b) should be dismissed. *Vanderbilt Mortg.*, 735 F. Supp. 2d at 701-02 (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993)); *see also Abraham*, 480 F.3d at 357 (dismissing §1962(b) claim where the "complaint describes no facts that would show a causal relationship between their injuries and the Defendants' acquisition or maintenance of an interest in the enterprise").

**3. Plaintiffs fail to state a claim under 18 U.S.C. §1962(c).**

As discussed above, Plaintiffs fail to sufficiently plead a pattern of racketeering activity. *See supra* Part I.B.2. Plaintiffs thus fail to allege a key element of a claim under subsection (c), which prohibits conducting or participating in the conduct of an "enterprise's affairs *through a pattern of racketeering activity*." 18 U.S.C. §1962(c) (emphasis added); *see also Gutierrez v. Venegas*, 2021 WL 9314946, at *7 (N.D. Tex. Sept. 8, 2021) (dismissing §1962(c) claim where "the complaint fails to sufficiently support its contentions that [defendant's] alleged activities qualify as 'a pattern of racketeering activity' under Section 1962(c)").

Plaintiffs' claim under §1962(c) likewise fails because Plaintiffs do not allege specific, non-conclusory facts about C.H. Robinson's conduct or participation in the affairs of the purported RICO enterprise. "[T]he Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement."

*Benhamou*, 190 F. Supp. 3d at 655 (citing *Plambeck*, 802 F.3d at 675). Neither "providing goods or services that ultimately benefit the enterprise," nor "having a business relationship with a RICO enterprise," nor "contributing to the enterprise with the knowledge of or willful disregard for the other defendants' supposed criminal activity" suffices to subject one to liability under §1962(c). *Id.* (cleaned up).

Here, Plaintiffs group-plead that "Defendants each operate, control, and participate in enterprises" and "operate, control, participate in, and otherwise rely upon, associated-in-fact enterprises consisting of numerous other companies/entities," Compl. ¶297, but offer no facts to support what role any C.H. Robinson entity, as opposed to other entities, played in the supposed enterprise, let alone how C.H. Robinson had "supervisory involvement," *Benhamou*, 190 F. Supp. 3d at 655. Instead, "Plaintiffs support these conclusory statements with threadbare recitals of the elements" of a §1962(c) claim, which the Court need not accept. *Gutierrez*, 2021 WL 9314946, at *5 (dismissing §1962(c) claim where plaintiffs did not plead "any allegations of [an individual defendant's] role … as a supervisor—within the alleged RICO enterprise").

**4. Plaintiffs fail to state a claim under 18 U.S.C. §1962(d).**

As discussed (*supra* at Sections I.C.1-3), Plaintiffs have not adequately pled a RICO claim under 18 U.S.C. §§1962(a), (b), or (c), including because Plaintiffs failed to adequately plead statutory standing and a pattern of racketeering activity. Accordingly, Plaintiffs' RICO conspiracy claim under 18 U.S.C. §1962(d) should be dismissed. *See Tassio*, 2016 WL 7799626, at *5 ("If a plaintiff fails to properly plead a RICO claim under §§1962(a), (b), or (c), it correspondingly fails to properly plead a conspiracy claim under § 1962(d).").

Plaintiffs' RICO conspiracy claim should also be dismissed for the independent reason that Plaintiffs fail to plead "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendants knew of and agreed to the overall objective of the RICO offense." *N.*

*Cypress Med. Ctr. Operating Co.*, 781 F.3d at 203 (cleaned up). The Complaint does not identify any agreement among Defendants to commit a substantive RICO violation, much less allege facts showing that each Defendant knew of and agreed to the overall objective of the purported RICO scheme or any of the actions constituting violations of subsections (a)-(c). The Complaint merely establishes that C.H. Robinson operates a freight brokerage service which involves transacting with shippers and carriers. Plaintiffs' conclusory allegations of coordinated conduct therefore cannot sustain a §1962(d) claim. *See Moore v. Garner*, 2005 WL 1022088, at *4 (E.D. Tex. Jan. 1, 2005) (dismissing RICO conspiracy claim and explaining that "simply stating that the 'defendants' conspired to participate in a racketeering scheme is far too vague and conclusory to sustain a 1962(d) claim and should be dismissed").

## II. Plaintiffs Fail To State A Claim Under The Lanham Act

Plaintiffs' Lanham Act claim should be dismissed because the Complaint fails to clearly identify any actionable false statements made by any C.H. Robinson entity.

A Section 43(a) false advertising claim requires the plaintiff to show: (1) "A false or misleading statement of fact," which (2) "either deceived, or had the capacity to deceive a substantial segment of potential consumers" about a product in interstate commerce; that (3) "[t]he deception is material"; and that (4) "[t]he plaintiff has been or is likely to be injured as a result of the statement at issue." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). "[T]he Court is required to accept the truth of neither conclusory statements nor legal conclusions masquerading as facts," such as a "conclusory allegation that [the defendant] was awarded the contract because of its misrepresentations." *Nat'l Travel Sys., L.P. v. Shorts Travel Mgmt., Inc.*, 2010 WL 11601990, at *6 (W.D. Tex. Oct. 7, 2010). Additionally, "[b]ald assertions of superiority or general statements of opinion," often referred to as "puffery," "cannot form the basis of Lanham Act liability." *Pizza Hut*, 227 F.3d at 496. "[T]he statements at issue must be a

'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Id.* (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)).

Plaintiffs allege that C.H. Robinson "represented that it could move freight cheaper, more quickly, and with greater access to capacity than Plaintiffs"; "promised it could do this while providing the same level of safety and meeting all applicable FMCSA regulations"; and "promised to provide drop trailers and take on the role of a traditional asset-based trucking company." Compl. ¶208. But none of these allegations identifies (a) the exact language of any such representation or promise; (b) which representations or promises were made to which of the customers Plaintiffs claim (without any factual support) relied on them; or (c) when these representations or promises were made—all preventing C.H. Robinson from being able to respond and the Court from being able to determine whether any particular statement was false or misleading. *See Pizza Hut*, 227 F.3d at 495 (recovery under the Lanham Act requires a statement that is either literally false or likely to mislead and confuse).

Elsewhere, Plaintiffs also group-plead that "Defendants" made "numerous oral, written, and online statements regarding its drivers and their safety and performance," including statements allegedly concerning "driver safety," qualification of drivers, and compliance with FMCSA regulations. Compl. ¶¶308, 311-14. These allegations suffer from the same defects but also lack facts showing which "Defendant" allegedly made the misrepresentation.

Nor does the Complaint explain how any statement by a C.H. Robinson entity led to Plaintiffs' purported injuries, "[a]side from a conclusory allegation that [C.H. Robinson] was awarded the contract because of its misrepresentations." *Nat'l Travel Sys.*, 2010 WL 11601990, at *6; *see also* Compl. ¶323. Even assuming that C.H. Robinson made representations about the

safety or compliance of carriers in its network (or those carriers' drivers) that were inaccurate—which it did not—Plaintiffs still have not pled any facts which suggest that it was these inaccuracies which led Plaintiffs to lose their business to C.H. Robinson. This is not enough to state a claim under the Lanham Act. *See Nat'l Travel Sys.*, 2010 WL 11601990, at *6 (dismissing Lanham Act claim where plaintiff "has not alleged facts sufficient to claim plausibly that [plaintiff] would have received the contract in the absence of [defendant's] misrepresentations").

Lastly, to the extent that Plaintiffs' Lanham Act claim is based on C.H. Robinson's statements about its general commitment to safety and compliance, *see, e.g.*, Compl. ¶¶311-12, this is non-actionable puffery because Plaintiffs have not identified statements reflecting "specific and measurable claim[s]." *See, e.g.*, *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 683 (S.D. Tex. 2015) (concluding that a statement that defendant provided the "SAFEST RIDE ON THE ROAD" and was "Going the Distance to Put People First" was non-actionable puffery and dismissing Lanham Act claim).

## CONCLUSION

The Court should dismiss the Complaint with prejudice as to C.H. Robinson for the reasons above.

Dated: November 19, 2026

Respectfully submitted,

*/s/ Alan Schoenfeld*

Alan Schoenfeld (*pro hac vice*)
NY Bar No. 4500898
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7294 (t)
(212) 230-8888 (f)
alan.schoenfeld@wilmerhale.com

Ronald Machen (*pro hac vice*)
DC Bar No. 447889
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (t)
(202) 663-6363 (f)
ronald.machen@wilmerhale.com

Joseph J. Mueller (*pro hac vice*)
*Lead Attorney*
MA Bar No. 647567
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6396 (t)
(617) 526-5000 (f)
joseph.mueller@wilmerhale.com

Michael E. Jones (State Bar No. 10929400)
Shaun William Hassett (State Bar No. 24074372)
POTTER MINTON PC
102 N. College, Suite 900
Tyler, TX 75701
(903) 597-8311 (t)
(903) 593-0846 (f)
mikejones@potterminton.com
shaunhassett@potterminton.com

*Attorneys for the C.H. Robinson Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2026, a true and correct copy of the above and foregoing document was transmitted to the Clerk of Court using the ECF System for filing. The Clerk of Court will transmit a Notice of Electronic Filing to all counsel of record.

*/s/ Alan Schoenfeld*
Alan Schoenfeld